UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OMAR KHALED | No. 18 CR 863-1<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Defendant Omar Khaled, who is currently serving a 110-month sentence for manufacturing and distributing large amounts of synthetic cannabis laced with rat poison, submitted a motion for compassionate release. R. 186. He argues that his lack of fluency in English and resulting difficulty participating in jail educational programming, as well as his family's difficulty visiting him, justify compassionate release. Khaled's motion is denied because neither of those reasons are "extraordinary and compelling" circumstances justifying a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

In 2018, hundreds of people around the nation (including at least 150 individuals in Illinois) experienced severe bleeding, hospitalizations, and even death after smoking a synthetic cannabis-style substance that was laced with brodifacoum and bromadiolone, two types of rat poison. R. 189 at 2; *see also* Ken Alltucker, *FDA Issues Warning After Synthetic Marijuana Tainted with Rat Poison Sickens Hundreds*, USA Today (July 20, 2018), https://www.usatoday.com/story/news/nation/ 2018/07/20/fda-warning-synthetic-marijuana-rat-poison/802585002/; *3 Deaths Tied to Excessive Bleeding from Synthetic Marijuana, Possibly Tainted with Rat Poison*,

1

CBS News (Apr. 10, 2018), https://www.cbsnews.com/news/synthetic-weed-rat-poison-chemical-deaths-tied-to-excessive-bleeding/. An investigation revealed that Khaled and his son were the manufacturers and suppliers of the rat poison-laced synthetic marijuana. R. 189 at 3. Over the course of 2018, Khaled and his son shipped over 5,000 packages containing at least 30 kilograms of synthetic marijuana from Florida to a local Chicago distributor, who had agreed to cooperate with the government in its investigation. *Id.* at 3, 5. Controlled buys of synthetic marijuana from that Chicago distributor tested positive for rat poison. *Id.* at 3. In December 2018, Khaled and his son were arrested at a storage unit in Florida that served as their base of operations. *Id.* at 4.

Khaled was charged with various counts of distribution and conspiracy in April 2019. *Id.* at 5. On November 27, 2019, he pleaded guilty to two counts of distribution. *Id.* On July 2, 2021, Khaled was sentenced to 110 months' imprisonment, which was below the advisory guidelines range of 121 to 151 months. *Id.* at 5. Later that year, Khaled filed a motion under 28 U.S.C. § 2255 to vacate his sentence, arguing that he received ineffective assistance of counsel because his lawyer advised him to plead guilty when he lacked knowledge that he was distributing a controlled substance. *United States v. Khaled*, 21 C 05367, ECF No. 10 (N.D. Ill.). This Court denied that motion. *Id.*

On May 5, 2023, Khaled filed a motion for compassionate release. R. 186. Khaled, who has served about half of his sentence, argues that he is not a United

States citizen and cannot "read, write [or] understand" English.[1] *Id.* at 1–2. This prevents him from participating in the prison educational programming, which does not offer Arabic-language options. *Id.* He therefore claims he cannot receive any of the benefits of completing programming under the First Step Act. *Id.* He further argues that his wife, children, and family reside in the country of Jordan and visitation is costly. *Id.* Khaled also contends that he is a first-time non-violent offender, he has had no discipline issues in prison, and will return to Jordan immediately upon release. *Id.* at 3–4.

    A court generally cannot modify a term of imprisonment except under rare circumstances. *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances," (cleaned up)). One such exception allows a court to grant compassionate release under 18 U.S.C. § 3582(c)(1)(A) if certain requirements are met. An inmate can request a compassionate reduction of his sentence if (1) he has exhausted his administrative remedies, (2) the court either finds "(i) extraordinary and compelling reasons warrant such a reduction," or "(ii) the defendant is at least 70 years of age" and meets other requirements, and (3) the factors laid out in 18 U.S.C. § 3553(a) warrant such a reduction. *Id.*

---

[1] Khaled apparently received help from an English-literate fellow inmate in preparing his motion.

At the outset, Khaled, who does not allege he is over 70 years old, does not present any "extraordinary and compelling" reasons for a sentence reduction. Section 3582(c)(1)(A) does not define what qualifies as "extraordinary and compelling," which is left to the discretion of the judge. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). He claims that his inability to comprehend English makes prison difficult and prevents him from participating in programming at the prison. But an inability to speak English is not extraordinary. Indeed, being a non-English speaker in prison is relatively common, given that one quarter of federal inmates are not United States citizens. *Profile of Prison Inmates, 2016 (Dec. 2021)*, U.S. Dep't of Justice Bureau of Justice Statistics, https://bjs.ojp.gov/content/pub/pdf/ppi16.pdf. Further, Khaled has the ability to participate in English as a Second Language ("ESL") classes—in fact, taking an ESL class is required for all BOP inmates who do not speak English. *See Education Programs*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/education.jsp ("Non-English-speaking inmates must take English as a Second Language."). Khaled is encouraged to take full advantage of this programming to better his English abilities.

Khaled also mentions that it is extraordinarily expensive for his family, who lives in Jordan, to visit him. The Sentencing Guidelines policy statement related to compassionate release does mention family circumstances as a basis for compassionate release. U.S.S.G. § 1B1.13 n.1. This policy statement is not binding, but it provides useful guidance. *Gunn*, 980 F.3d at 1180. The statement opines that

4

the following familial circumstances could be considered extraordinary and compelling reasons for early release:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13 n.1. That Khaled wants to see his family is commendable and understandable, but not an extraordinary or compelling circumstance, such as the death or incapacitation of his wife. A natural consequence of being imprisoned is an inability to see one's family as much as one desires.

Finally, Khaled argues that he is a non-violent first-time offender. But he minimizes the facts of his case. Khaled did not merely distribute a controlled substance—he manufactured and distributed a controlled substance that was laced with rat poison, leading to hundreds of hospitalizations and multiple deaths. Regardless of whether that was intentional, the length of Khaled's sentence (which was still below guidelines) reflects the severity of his crimes and should not be easily disregarded. Moreover, maintaining a good disciplinary record in prison and wanting to return to Jordan upon his release do not support early release. *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (that the defendant would be removed to Nigeria upon completion of sentence was not extraordinary or compelling reason justifying early release) ("Most nonviolent criminals maintain good disciplinary records; that [a defendant] fits the norm is not extraordinary.").

5

The Court therefore need not reach whether the factors laid out in § 3553(a) warrant a reduction. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) ("Only after finding an extraordinary and compelling reason for release need the judge . . . consider any applicable sentencing factors in § 3553(a) . . . ."). Khaled's motion for compassionate release is consequently denied.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: July 18, 2023